UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **ALBERT O'NEAL, JR.** | **CIVIL ACTION NO. 22-3318** |
| | **SECTION P** |
| VS. | |
| | **JUDGE TERRY A. DOUGHTY** |
| **PAROLE AND PROBATION OF TALLULAH, LA, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Albert O'Neal, Jr., a former prisoner at Richland Parish Detention Center proceeding pro se and in forma pauperis, filed this proceeding on approximately August 23, 2022, under 42 U.S.C. § 1983. He names the following defendants: "Parole and Probation of Tallulah, La.," Chris Castolleti, and Parole Officer Faith Brakefield.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff claims that his parole officer, Faith Brakefield, misinformed him "of the actual consequences of signing the parole revocation that she presented to [him]." [doc. # 1, p. 3]. He alleges that Brakefield did not properly inform him "of all his options and full consequences of signing the parole revocation documents." [doc. # 5, p. 1]. He claims that Brakefield misinformed and manipulated him "into revoking his parole," "knowing that he did not fully understand the technical details of the parole revocation process[.]" *Id.* Brakefield allegedly told him that revoking his parole "would be the fastest way out of jail . . . ." *Id.* She did not inform

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff of any other available option after she "noticed that he was convinced by her vague explanation and" that he was willing "to sign the parole revocation document." *Id.* Plaintiff claims that she "performed her job inadequately, at a minimum capacity, in order to close on a case as quickly as she could for her own benefit instead of the best benefit of the parolee." *Id.*

Plaintiff maintains that if Brakefield "better informed" him, he would have "denied revoking" his parole until his charge was resolved. [doc. # 1, p. 3]. He adds, "my charges were minor and I would have rather had the chance to have my parole reinstated instead of revoked." *Id.* He allegedly "could have been given a technical violation . . . instead of spending an excessive amount of time incarcerated . . . ." [doc. # 5, p. 1].

Plaintiff signed "parole violation papers" in April 2022. [doc. # 1, p. 3]. He claims that Chris Castolleti, a supervisor of parole and probation, failed to process his "paperwork" from April 25, 2022, to August 11, 2022, which extended his incarceration by 3.5 months and denied him his "right to the legislative good-time assigned to the offense [he] was currently on parole for . . . ." *Id.* In an amended pleading, Plaintiff explains that because Castolleti did not process his parole revocation paperwork in a reasonable and timely manner, he was unable to participate in programs to earn good-time credits. [doc. # 5, p. 2]. He alleges that because he was unable to earn good-time credits and obtain an earlier release from incarceration, he lost his job as a cook "in the outside workforce" and was unable to earn income for his family. *Id.*

Plaintiff seeks release from incarceration, reinstatement of his parole, $250,000.00, and an investigation into the "judicial system that governs the parole revocation process . . . ." [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff was a prisoner when he initiated this proceeding. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening under to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

*Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

4

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Habeas Corpus**

Plaintiff seeks release from confinement. Habeas corpus relief is unavailable through a civil rights action. *See Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (any claim attacking the validity or duration of confinement must be raised in a habeas corpus petition); *Richie v. Scott*, 70 F.3d 1269 (5th Cir. 1995) ("Habeas petitions challenging the revocation of the petitioner's parole sound under § 2241."); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). "A habeas petition . . . is the proper vehicle to seek release from custody." *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997). The Court should therefore dismiss Plaintiff's habeas corpus request from this civil rights action.

Plaintiff may pursue release from confinement in a habeas corpus action. The undersigned cautions that Plaintiff must first exhaust all his available *state court* remedies before he may obtain habeas corpus relief in this Court.

**3. "Probation and Parole"**

Plaintiff names "Parole and Probation of Tallulah, La.," as a defendant.

Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).[3]

---

[3] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Id.* (internal quotation marks and quoted sources omitted).

Further, "State agencies . . . are not 'persons' within the meaning of the statute." *Lumpkins v. Off. of Cmty. Dev.*, 621 F. App'x 264, 268 (5th Cir. 2015) (*quoting Will*, 491 U.S. at 71).

The Louisiana Department of Public Safety and Corrections and one of its divisions, the Division of Probation and Parole,[4] are state agencies.[5] Thus, they are not "persons" under Section 1983. *See Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) ("The State and [Department of Public Safety and Corrections] are not persons . . . ."); *Allemang v. Louisiana Through Dep't of Pub. Safety (Louisiana Off. of State Police, Troop D)*, 2022 WL 3226620, at *4 (5th Cir. Aug. 10, 2022) (finding that the Louisiana State Police Department, which is a "sub-unit" of the Louisiana Department of Public Safety, was not a "person" and was consequently not a cognizable defendant).

Accordingly, the Court should dismiss Plaintiff's claims against Parole and Probation of Tallulah, La.

**4.** ***Heck v. Humphrey***

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), the Court should dismiss Plaintiff's remaining claims against Parole Officer Brakefield.

A successful civil rights action that would necessarily imply the invalidity of a plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. *Id.* at 477. *Heck* applies in the context of probation

---

[4] *See* LA. REV. STAT. § 36:401.

[5] The Louisiana Department of Public Safety and Corrections' website states that the Division of Probation and Parole maintains a district "Probation/Parole Office" in Tallulah, Louisiana. https://doc.louisiana.gov/location/tallulah/ (last visited November 3, 2022).

and parole violations. *See Jackson v. Vannoy,* 49 F.3d 175, 177 (5th Cir. 1995) ("*Heck* applies to proceedings which call into question the fact or duration of parole."); *Eaton v. McGee*, 113 F. App'x 9, 10 (5th Cir. 2004) ("Eaton's complaint challenges the validity of his probation revocation and two additional convictions, but he has not shown that the revocation or convictions have been set aside or otherwise called into question. His claims are barred by *Heck* and, thus, have no arguable merit.").

Here, Plaintiff challenges the revocation of his parole, and he faults Parole Officer Brakefield. Prevailing on his claims against Brakefield would necessarily imply the invalidity of the decision or order revoking his parole. *See Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) ("A judgment in favor of Jackson on his illegal seizure claim would necessarily imply the invalidity of the revocation of his probation and parole. It logically follows that *Heck* applies to Jackson's probation and parole revocation proceedings.") (footnote omitted); *Santiago v. Martin*, 95 F. App'x 96, 97 (5th Cir. 2004) (finding, where the plaintiff claimed that defendants retaliated and ensured that his parole was revoked, that *Heck* barred the claim).[6]

Plaintiff may not seek relief until the judgment or order revoking his parole is reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.

---

[6] *See also Carter v. Jenkins*, 550 F. App'x 177, 178 (5th Cir. 2013) ("To the extent that Carter challenges the validity of his parole revocation, the district court's decision determining that such a claim is barred by *Heck* was not erroneous."); *Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995) ("Littles has questioned the validity of the confinement resulting from his parole-revocation hearing, and he has not alleged that the Board's decision has been reversed, expunged, set aside, or called into question, as *Heck* mandates.").

### 5. Defendant Castolleti

Plaintiff claims that because Defendant Castolleti did not process his parole revocation paperwork in a reasonable and timely manner, he was unable to participate in programs to earn good-time credits for an earlier release from incarceration. [doc. # 5, p. 2]. Otherwise stated, Plaintiff appears to claim that Castolleti deprived him of the opportunity to earn good-time credits.

First, to the extent Plaintiff claims that Castolleti deprived him of procedural due process, "the loss of the opportunity to earn good-time credits does not constitute a constitutionally cognizable injury." *Rodriguez v. Laflore*, 230 F. App'x 351, 352 (5th Cir. 2007). "The Constitution does not guarantee good time credit for satisfactory behavior while in prison." *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000).

Second, Plaintiff does not have a constitutional right to participate in classes and programs to earn good time. *McBride v. Powers*, 364 F. App'x 867, 870-71 (5th Cir. 2010) (holding that the plaintiff "failed to state a claim for violation of his equal protection or due process rights, as inmates have no constitutional right to participate in rehabilitative or educational programs while incarcerated."); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) ("[A] state has no constitutional obligation to provide basic educational or vocational training to prisoners."); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (holding that the loss of a prison job did not implicate the prisoner's liberty interest even though the prisoner lost the ability to automatically accrue good-time credits).[7]

---

[7] *See Cobb v. Whittington*, 2016 WL 1019466, at *3 (W.D. La. Feb. 16, 2016), report and recommendation adopted, 2016 WL 1057498 (W.D. La. Mar. 14, 2016) ("While prisoners who are entitled to release on mandatory supervision have a protected liberty interest in previously-earned good-time credits they are not constitutionally entitled to earn such credits.").

Finally, Plaintiff's claim sounds in negligence at best. He alleges that Castolleti acted unreasonably and untimely. Allegations of negligence do not state claims of constitutional dimension. *See Daniels v. Williams*, 474 U.S. 327, 336 (1986) (holding that the United States Constitution does not address injuries inflicted by governmental negligence); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (recognizing that plaintiffs must "demonstrate culpability beyond mere negligence or even gross negligence."); *see also Sanchez v. Swyden*, 139 F.3d 464, 469 (5th Cir. 1998) ("Although we have held that illegal detention by way of false imprisonment is a recognized § 1983 tort, . . . we have required proof that the official's actions went beyond mere negligence before that tort takes on constitutional dimensions.").

Accordingly, the Court should dismiss this claim.

### **Recommendation**

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Albert O'Neal, Jr.'s, requests for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** to his right to pursue the relief in a separate habeas corpus proceeding after he exhausts all his state remedies.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Parole Officer Brakefield be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state claims on which relief may be granted until the *Heck* conditions are met.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 3rd day of November, 2022.

_____
Kayla Dye McClusky
United States Magistrate Judge